A03A1856. YOUNG v. THE STATE.
(594 SE2d 667)

ADAMS, Judge.

Bobby Ray Young entered into a negotiated plea and was sentenced as a first offender to probation on two felonies. Young's first offender status was later revoked based on an allegation of a subsequent felony. This Court granted Young's application for discretionary review of the decision to revoke his first offender status and probation.

On January 28, 2002, Young was sentenced to ten years probation on a count of theft by deception and three years probation on a count of deposit account fraud, with the sentences to run consecutively. On both charges he was given first offender treatment, and his probation was conditioned upon his agreement not to violate any criminal laws.

On September 25, 2002, Young was incarcerated on additional charges of theft by deception based on an incident that took place in March and April of that year. On October 18, the State petitioned to revoke Young's probation based on this alleged crime. The trial court ordered Young to appear for a revocation hearing on December 12, 2002.

For the purposes of the hearing, the State and Young stipulated to certain facts regarding the incident. Young also testified. Following the hearing, the trial court found by a preponderance of the evidence that Young had committed a subsequent offense of theft by deception, and the court adjudicated Young guilty on both of the original charges. On the charge of theft by deception, Young was sentenced to ten years to serve two in confinement. On the charge of deposit account fraud, Young was sentenced to five years to serve two years in confinement concurrently with the theft sentence. The court added that the sentence was in addition to time already served on probation. By the time of the hearing, Young had been incarcerated for 78 days.

Young contends that the evidence was insufficient to support the

trial court's revocation of his first offender status. First offender status may be revoked based on alleged violations of probation if "evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1 (b). See *Couch v. State*, 246 Ga. App. 106, 107 (539 SE2d 609) (2000) (citing OCGA § 42-8-34.1 as applicable to revocation of first offender status). If admissible evidence is presented in support of the allegations regarding revocation of probation, this court will affirm. Id. See also *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997) (trial court's factual findings will not be disturbed unless clearly erroneous).

At the hearing, the facts presented showed that on March 27, 2002, Young, doing business as "The Car Man," entered into a written contract with Kendra Moody whereby Moody agreed to purchase from Young a 1995 Cadillac Eldorado for $5,500 plus taxes and other fees. She made a $2,000 down payment. The parties agreed that Young would locate such a car according to Moody's color preference of black, white, green, and burgundy, in that order, but the contract did not contain a deadline for Young's performance. The contract was signed by Young as president of "The Car Man, Inc."

Later, Moody went to Young's place of business because she had not been able to contact Young. She talked to the manager of his business and learned that the business had been forced to move less than two weeks after she signed the agreement. After repeated attempts, she eventually contacted Young and asked to rescind the contract, which was allowed under the agreement. Young agreed to rescind the agreement and return the down payment. He provided $500 in cash but wrote a check post-dated by two days for the balance. When Moody attempted to cash the check after two or three days, it was not honored. She then swore out a warrant for Young's arrest for theft by deception.

Young was arrested. Shortly thereafter he paid Moody the balance of $1,500 with a bank check. The State agreed that Moody had been fully reimbursed. Young denied committing theft by deception. He testified that he called Moody numerous times prior to when his business moved and that he explained the situation to her.

A person commits theft by deception if he or she obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property. OCGA § 16-8-3 (a). That Code section lists five types of deceitful conduct: (1) lying about a present fact or past event; (2) failing to correct a false impression about a present fact or past event; (3) preventing another from acquiring pertinent information about the property; (4) intentionally failing to disclose certain title or legal problems in connection with the sale or transfer of property; and (5) promising performance of services with no intent

to perform. OCGA § 16-8-3 (b). With regard to the last item, "[e]vidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection." OCGA § 16-8-3 (b) (5).

In this case, the theft by deception charge must be based on one or more of three events: entry into the purchase and sale agreement, rescission of the agreement, or the determination that there were insufficient funds to cover the $1,500 check.

With regard to entry into the agreement, we find no theft by deception. There is no evidence in the record that Young did not intend to perform under the contract. Indeed, there is no evidence that he failed to perform. The contract did not provide a deadline for performance, and Moody voluntarily elected to rescind the agreement.

With regard to the rescission, the facts show that Moody had a right to rescind, that Young allowed the rescission, and that Moody knowingly took cash and a post-dated check. And there is nothing in the law to prevent parties from agreeing to use post-dated checks. See *Bivins v. State*, 153 Ga. App. 631 (266 SE2d 304) (1980).

Finally, the fact that the post-dated check bounced is not sufficient, standing alone, to establish a crime. A post-dated check is an implied promise to cover the draft when it is presented in the future. *Bivins*, 153 Ga. App. at 632. Without more, "[s]uch a promise of future performance cannot serve as a basis for a bad check charge. [Cit.]" Id. Compare *Galbreath v. State*, 193 Ga. App. 410 (387 SE2d 915) (1989) (where the payor receives present consideration, the payee lacks knowledge that the check is post-dated, and the payor asserts that funds are currently in the bank, issuing a post-dated check that later bounces may constitute a crime). In this case, there is no evidence that Young had a then present fraudulent intent when he wrote the post-dated check, i.e., no evidence that he knew at the time that it would not be honored on the date shown on the check. See id. at 413. And the only evidence shows that Moody knowingly accepted a post-dated check.

In short, we find that the trial court's finding that Young had committed theft by deception in connection with his dealings with Moody was clearly erroneous. In light of our holding, the remaining enumerations of error need not be addressed.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 4, 2004.

*Harper, Waldon & Craig, Russell D. Waldon, James A. Neuberger*, for appellant.

*Daniel J. Porter, District Attorney, Julie L. Johnson, Assistant District Attorney*, for appellee.